THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID ROLLAND, Defendant-Appellee.

Fifth District   No. 5—90—0381

Opinion filed November 13, 1991.

William R. Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On November 19, 1989, the defendant, David Rolland, was arrested and charged with simple battery. An appearance date was set for December 20, 1989. On that day Mr. Rolland appeared in court and entered a plea of guilty to the battery charge and paid the assessed fine of $100. On January 16, 1990, the State filed a motion to vacate and set aside the defendant's guilty plea. This motion was granted on February 20, 1990. The misdemeanor charge of battery was nol-prossed, and on May 10, 1990, the defendant was indicted for the offenses of attempted first-degree murder, armed violence, and aggravated battery. The defendant's motion to dismiss the charges was granted, and the trial court held that the principles of double

jeopardy precluded the reprosecution of the defendant. The State appeals the dismissal of the charges. We affirm.

On the evening of November 18, 1989, at Flick's Old Time Saloon in Madison County, Illinois, the victim, Michael Ridens, sat at a table speaking with relatives of the band. Shortly before closing time the defendant, David Rolland, approached Mr. Ridens with an empty glass beer pitcher in his hand and struck him in the face and head with the pitcher.

When Illinois State Trooper Brian Ropac arrived, Mr. Ridens had already been transported to the hospital. After interviewing witnesses, Ropac arrested the defendant, placed him in the squad car, and drove to Highland Hospital to see if the victim would sign a complaint against the defendant. At the hospital Ropac noted that Ridens' forehead and mouth were severely bruised and that his face was split from his nose to his mouth. Ridens, according to Ropac, was not fully coherent and did not know who had hit him. Ropac then transported defendant to the Madison County jail, where he was advised of his rights and made a statement. The defendant was issued a citation charging him with misdemeanor battery and setting an appearance date of December 20, 1989. Defendant posted bond and was released on November 19, 1989. A verified complaint was filed by Trooper Ropac the next day, November 20, 1989.

Unbeknownst to Ropac or the State's Attorney's Office, Michael Ridens' condition deteriorated, and he fell into a coma. Ridens was transferred to St. Louis University Medical Center, where a craniotomy was performed to treat his head injuries, which included a subdural hematoma and dural bleeding. Ridens remained in a coma with recurring high fever spikes attributable to damage done to the area of the brain controlling body temperature. The record reveals that Ridens' comatose condition was essentially unchanged as of April 1990.

On December 13 or 14, 1989, Assistant State's Attorney Greg Erthal was contacted by the State police and notified that the victim's condition was much worse than originally believed. At that time the State's Attorney's office decided to dismiss the misdemeanor battery charge and to file felony charges against the defendant. Mr. Erthal notified the circuit clerk's office that he intended to drop the misdemeanor battery charge and file felony charges. Erthal asked that the defendant's file be found and held for that purpose. On December 20, 1989, the date set for the defendant's appearance, Assistant State's Attorney Erthal went to the clerk's office, but he could not locate defendant's file, which had already been sent to the courtroom with the other first appearance files.

Defendant appeared in court on December 20, approached three men sitting at a table, and asked if any more charges had been filed against him. He was told that no other charges had been filed. A short time later Deputy Sheriff Don Bridick, a court liaison officer who routinely filled out guilty plea forms, called defendant's name and asked him what he wanted to do. Defendant replied he would plead guilty to the misdemeanor battery charge and pay the $100 fine suggested by Deputy Sheriff Bridick. Defendant subsequently entered his plea with the court, and a fine of $100 was imposed. At some time Mr. Erthal called the defendant back to the table and told him that he could not accept the defendant's guilty plea since other charges were going to be filed. Mr. Erthal then notified the court of his intentions and was told to file a written motion to vacate the sentence and the plea.

On January 16, 1990, Erthal filed a motion to vacate and set aside plea. This motion was granted, and the battery charge was nol-prossed on February 20, 1990. On May 10, 1990, a Madison County grand jury indicted the defendant for attempted first-degree murder, armed violence, and aggravated battery. Defendant filed a motion to dismiss alleging that prosecution was barred by a former prosecution. The court granted defendant's motion to dismiss on grounds of double jeopardy. The court held that jeopardy had attached at the time the defendant's guilty plea to misdemeanor battery was entered and that the entry of judgment was not void.

Double jeopardy is prohibited both under the Constitution of the United States, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb" (U.S. Const., amend. V), and under section 10, article I, of the Constitution of Illinois, "No person shall *** be twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, §10.) Section 3—4(b)(1) of the Criminal Code of 1961 provides:

> "(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if such former prosecution:
>
> (1) Resulted in either a conviction or an acquittal, and the *subsequent prosecution* is for an offense of which the defendant *could have been convicted* on the former prosecution; or was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3—3 of this Code (unless the court ordered a separate trial of such charge); or was for an offense which involves the same conduct, unless each prosecution requires proof of a fact not required on the

other prosecution, or the offense was not consummated when the former trial began. (Emphasis added.)'' (Ill. Rev. Stat. 1989, ch. 38, par. 3—4(b)(1).)

The People argue that the trial court's acceptance of the guilty plea to the misdemeanor battery charge was void and thus could not bar subsequent prosecution since no jeopardy could attach as a result of a void judgment. The People claim that Deputy Sheriff Don Bridick acted without the proper authority of the State's Attorney's office and that the court's acceptance of the defendant's guilty plea and entry of judgment thereon was void. A void judgment is one entered by a court that lacks the inherent power to make or enter the particular order involved and may be attacked at any time either directly or collaterally. (*People v. Wade* (1987), 116 Ill. 2d 1, 5, 506 N.E.2d 954, 955.) Such a judgment would be a nullity, and the double jeopardy clauses of the Federal and State Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10) would not bar subsequent prosecution. *People v. Pankey* (1983), 94 Ill. 2d 12, 19, 445 N.E.2d 284, 288-89.

The circuit court found that Deputy Bridick acted with the implied authority of the State's Attorney's office and as such the judgment was not void and could not be vacated. Implied authority is defined as actual authority proved circumstantially and is implied from facts and circumstances. (*Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 863, 504 N.E.2d 1284, 1295; *Illinois Armored Car Corp. v. Industrial Comm'n* (1990), 205 Ill. App. 3d 993, 998, 563 N.E.2d 951, 955.) The evidence indicated that Deputy Bridick frequently handled dockets in the manner that he did in the instant case and that he had been doing so for at least the previous 18 months with the full knowledge and acquiescence of the State's Attorney's office. The People do not now argue that the many pleas accepted by Deputy Bridick and his predecessors are void. The record supports the trial court's finding of implied authority on the part of Deputy Bridick. The judgment, therefore, was not void, and jeopardy did attach.

The State attempts to distinguish the United States Supreme Court's holding in *Grady v. Corbin* (1990), 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084, on the grounds that the original plea in *Grady* was not void. However, the trial court has found that the original plea in the instant case was valid, and we conclude that the record supports its finding. This being said, *Grady* becomes applicable and the words of the Court equally appropriate:

"This record represents another example of an unfortunate lapse in orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often un-

derstaffed prosecutor's offices. The heavy workload may well explain these episodes, but it does not excuse them." *Grady v. Corbin* (1990), 495 U.S. at 524, 109 L. Ed. 2d at 566, 110 S. Ct. at 2095.

However unpleasant the result may be, the State cannot use its own errors to deny a defendant the protection from double jeopardy afforded by the constitution. *Benton v. Maryland* (1969), 395 U.S. 784, 797, 23 L. Ed. 2d 707, 717, 89 S. Ct. 2056, 2064.

For the foregoing reasons, we hold that the circuit court did not err in determining the original plea to be valid and subsequent prosecution to be barred by principles of double jeopardy.

Affirmed.

LEWIS and HOWERTON, JJ., concur.